UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13-CV-1533AGF-NAB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Patricia Wilson's ("Wilson") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Wilson alleged disability due to bipolar disorder. (Tr. 106.) This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for a report and recommendation. [Doc. 5.] Based on the foregoing, the undersigned recommends that the Commissioner's decision be affirmed.

**I.    Background**

On August 8, 2007, Wilson completed her application for disability insurance benefits. (Tr. 83-90.) The Social Security Administration ("SSA") denied Wilson' claim and she filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 37-46.) The SSA granted Wilson's request and a hearing took place on July 21, 2009. (Tr. 14-36, 47-48.) Wilson testified at the hearing and was represented by counsel. On August 21, 2009, the ALJ issued a written decision upholding the denial of benefits. (Tr. 5-13.) Wilson requested review of the

ALJ's decision by the Appeals Council. (Tr. 4.) On July 17, 2010, the Appeals Council denied Wilson' request for review. (Tr. 1–3.) Wilson appealed to the United States District Court Eastern District of Missouri. *Wilson v. Astrue*, 4:10-CV-1546 SNLJ (E.D. Mo. Oct. 4, 2011). On October 4, 2011, the District Court reversed and remanded the decision of the ALJ because the ALJ erroneously found that Wilson's mental impairment was not a severe impairment. (Tr. 474-499.)

Upon remand, a different ALJ held a supplemental hearing on June 11, 2012. (Tr. 443-461.) Wilson and vocational expert ("VE") Delores Gonzalez testified at the hearing. Wilson was represented by counsel. On July 10, 2012, the ALJ issued another decision upholding the denial of benefits. (Tr. 428-438.) Wilson filed written exceptions to the ALJ's decision, requesting that the Appeals Council assume jurisdiction. (Tr. 418-419.) The ALJ declined to assume jurisdiction. (Tr. 413-416.) Thus, the decision of the ALJ stands as the final decision of the Commissioner after remand. 20 C.F.R. § 404.984(b)(2). Wilson filed this appeal on August 8, 2013. [Doc. 1.] Wilson filed a Brief in Support of her Complaint. [Doc. 17.] The Commissioner filed an Answer and Brief in Support of the Answer. [Docs. 10, 23.]

## II. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).

Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

    (1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physician;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

It must be noted that because Wilson's last date insured is December 31, 2004, Wilson has the burden to show that she had a disabling impairment before her insured status expired. *See Barnett v. Shalala*, 996 F.2d 1221 (8th Cir. 1993) (*citing Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984)). "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider her medical condition as of the date she was last insured." *Davidson v. Astrue,* 501 F.3d 987, 989 (8th Cir. 2007) "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

## III. ALJ Decision

First the ALJ determined that Wilson last met the insured status requirements of the Social Security Act on December 31, 2004 and has not engaged in substantial gainful activity during the period from her alleged onset date of May 27, 2003 through her date last insured of December 31, 2004. (Tr. 430.) Second, she found that Wilson had the severe impairments of

migraine cephalgia, hypertension, hyperlipidemia, depression, bipolar disorder, and anxiety. (Tr. 431.) Third, the ALJ determined that Wilson did not have an impairment or combination of impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 431.) She also found that Wilson had the residual functional capacity ("RFC") to occasionally lift and carry up to 50 pounds, stand or walk and sit six hours out of an eight-hour work day. (Tr. 432.) She determined that Wilson must avoid climbing ropes, ladders, scaffolds, and avoid hazards or heights. (Tr. 432.) The ALJ also determined that Wilson was able to understand, remember, and carry out at least simple instructions. (Tr. 432.) Fourth, the ALJ found that through the date last insured, the claimant was unable to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that Wilson could have performed. (Tr. 436.) Finally, the ALJ concluded that Wilson was not under a disability, as defined in the Social Security Act, at any time from May 27, 2003, the alleged onset date, through December 31, 2004, the date last insured. (Tr. 437.)

## IV. Administrative Record[1]

The following evidence was contained in the administrative record before the ALJ. Wilson amended her alleged onset date to May 27, 2003 and requested that the ALJ find a closed period of disability from May 27, 2013 to the date last insured of December 31, 2004. (Tr. 446.)

### A. Administrative Hearings

#### 1. Wilson's Testimony

Wilson testified that she was sixty years old at the time of the first hearing and she completed high school. (Tr. 17-18.) Wilson stated that she last worked part-time ten hours per week at Cracker Barrel. (Tr. 19.) Her job ended, because she needed certain days off to baby-sit

---

[1] Two administrative hearings were held in this matter. ALJ James Seiler presided over the first administrative hearing on July 21, 2009. ALJ J. Pappenfus presided over the second administrative hearing on June 11, 2012.

her grandchildren. (Tr. 19.) Wilson stated that she also worked part-time, between fifteen and twenty hours, at Dressbarn from 2006 to 2007. (Tr. 19.) She also worked as a hostess for Calico's for two years for a couple of hours a day. (Tr. 20.) Wilson worked part-time at a dollar store for fifteen hours per week. (Tr. 20-21.)

Wilson testified that bipolar disorder and depression prevent her from working on an ongoing full-time basis. (Tr. 21.) She also testified that she has highs and lows, and can stay in the bed and not leave the house. (Tr. 21.) She was diagnosed as bipolar in 1999 by Dr. Malik at St. Anthony's Hospital. (Tr. 21.) Wilson was admitted to the hospital for an overdose and seventy pills had to be pumped out of her. (Tr. 21, 452.) She was in a coma for three days. (Tr. 21.)

In 2007, Wilson was hospitalized for cutting her arms and she spent a week at the Highland Center. (Tr. 22, 452.) Wilson also was an outpatient at Center Pointe Hospital for three weeks in June 2009. (Tr. 22.) Wilson stated that she had a lot of counseling and tried a lot of different medications with Dr. Malik. (Tr. 23.) She testified that her counseling sessions with Dr. Malik lasted from 30 to 45 minutes. (Tr. 23.)

Wilson testified that when she has highs she feels good, but when she reaches low points she has crying spells that can last for two days. (Tr. 23-24.) She also testified that during these lows she keeps her pajamas on for a week and only washes her face. (Tr. 25.) In 1989, she had slept in the same clothes for three weeks and had dropped down to ninety-five pounds. (Tr. 25.) Wilson stated that she was mentally and physically abused in her marriage. (Tr. 25.) She is suicidal during the low periods. (Tr. 26.) Her sleep is not good and she takes Trazadone for her sleep that gives her four hours of sleep. (Tr. 26.)

Wilson states that she also experiences panic attacks. (Tr. 271.) During panic attacks, she experienced shortness of breath, heart racing, sweating, and crying. (Tr. 27-28.) Wilson also obsessively counts. (Tr. 30.) She drives once a week or every couple of weeks to go to the store. (Tr. 34-35, 454.) Sometimes she needs to pull over when driving due to the thoughts running in her head. (Tr. 30.) She also forgets how she arrived at a place. (Tr. 453.) Wilson's physical problems include arthritis, bursitis in her left hip, high blood pressure, and migraine headaches. (Tr. 31.) She has experienced migraine headaches for several years. (Tr. 31.) The headaches occur once or twice a month and cause her to lay in bed and cry in a dark room. (Tr. 31-32.) During the covered period, Wilson stated that she migraine headaches several times per week. (Tr. 455.) Wilson cleans around the house, including vacuuming. (Tr. 33.) She does not cook. (Tr. 33.) She only prepares sandwiches and soups. (Tr. 33, 454.) Wilson stated that she does the laundry once a week, or once every two weeks. (Tr. 33.)

Wilson does not go out or visit with friends unless they invite her. (Tr. 32, 453.) She does not belong to any groups where she could attend meetings or services on a regular basis. (Tr. 33, 453.)

### 2. Vocational Expert Delores Gonzalez

VE Delores Gonzalez testified that Wilson's work as a hostess, sales clerk, and assistant manager was semi-skilled with a light exertional level. (Tr. 457.) Gonzalez testified that Wilson's work as a baker was skilled work with a medium exertional level. (Tr. 457.) She also stated that if Wilson was capable of unskilled work at the medium exertional work, with the added limitations of avoiding ropes, ladders, scaffolding, and hazardous heights, she would be unable to perform any of her past relevant work. (Tr. 458.) Gonzalez testified that Wilson would be able to perform the jobs of porter, change person, and cashier in accordance with the

hypothetical posed by the ALJ. (Tr. 458-459.) Finally, she stated that if a person was absent from work two to four days per month he or she could not maintain employment. (Tr. 460.)

### B. Medical Record

#### 1. Dr. Daniel Meshoto

Dr. Daniel Meshoto served as Wilson's primary care physician between 1997 and 2007. (Tr. 200-234.) Dr. Meshoto treated Wilson for a variety of common ailments including bronchitis, back pain, headaches, hypertension, and sinus infection. *Id.* He also treated Wilson several times for back pain, hyperlipidemia, migraine cephalgia[2], depression, and anxiety. *Id.*

#### 2. St. Anthony's Medical Center

Wilson has been treated several times at St. Anthony's Medical Center. In November 2001, the hospital admitted Wilson for three days for chest pain, back pain, and depression. (Tr. 297-300.) In January 2002, Wilson underwent a laparoscopic adhesiolysis[3] for extensive pelvic/abdominal adhesions and abdominal pain. (Tr. 294.)

Wilson was admitted to the hospital from September 12, 2003 to October 3, 2003 for bipolar disorder, depressed. (Tr. 276-286.) She received inpatient treatment for vasovagal syncope[4], concussion syndrome, headache, scalp laceration, high blood pressure and depression in November 2004. (Tr. 266-275.) She was referred to treatment by Dr. Kapal Datta, because her depression symptoms were worsening due to difficulties with her boyfriend. (Tr. 277.) At the time of discharge, her sleep had improved, her affect was brighter, and her irritability had decreased. (Tr. 277-278.)

---

[2] Cephalgia is a synonym for headache. Stedman's Medical Dictionary 1399 (27th ed. 2000)
[3] Adhesiolysis is "the severing of adhesive bands done by laparascopy or laparotomy." Stedman's Medical Dictionary 27 (27th ed. 2000)
[4] Vasovagal syncope or vasodepressor is "reduction of tone in blood vessels with vasodilation and resulting in lowered blood pressure." Stedman's Medical Dictionary 1745, 1933 (27th ed. 2000)

8

Wilson received treatment in the emergency room on December 26, 2006 for lumbago.[5] (Tr. 263-265.) Wilson received treatment for diarrhea in the emergency room on March 26, 2007. (Tr. 256-260, 262.) On May 10, 2007, Wilson was treated in the emergency room for chest pain. (Tr. 240-255.) She received a diagnosis of acute pleurisy[6] and was discharged home. (Tr. 243.) In August 2007, Wilson received treatment for bipolar depression and homicidal ideation. (Tr. 301-335.)

In August 2010, Wilson began primary care with Dr. Dana C. Galbraith at St. Anthony's. (Tr. 665-667.) Dr. Galbraith found that Wilson had benign hypertension, chronic obstructive pulmonary disease, bipolar disorder and ordered her to undergo a mammogram and lipid disorders screening. (Tr. 666.) On August 26, 2010, a routine mammogram showed no signs of malignancy. (Tr. 644.) A chemistry panel from August 27, 2010 was normal. (Tr. 641.) Wilson visited Dr. Galbraith for neck pain in November 2010 and received a prescription for Flexiril for a tension headache. (Tr. 661.) On January 4, 2011, Wilson received treatment for a headache and sore threat. (Tr. 659.) Dr. Galbraith found that Wilson had acute upper respiratory infection and low back pain; she prescribed Corzall Plus Liquid for the respiratory infection and Vicodin for low back pain. (Tr. 659-660.) Wilson next visited Dr. Galbraith in April 2011 for low back and elbow pain. (Tr. 655.) Dr. Galbraith determined that Wilson had lateral epicondylitis and low back pain. (Tr. 655.) She prescribed a tennis elbow brace, Vicodin, and Prednisone. (Tr. 655.) On May 24, 2011, Wilson visited Dr. Galbraith for a four-week follow-up for her elbow and lower back pain. (Tr. 653-654.) Dr. Galbraith gave Wilson an injection for the elbow pain and Vicodin for the lower back pain. (Tr. 642, 653.) On July 14, 2011, Wilson

---

[5] Lumbago is "pain in the middle and lower back; a descriptive term not specifying a cause. Stedman's Medical Dictionary 1034 (27th ed. 2000)
[6] Pleurisy is an "inflammation of the pleura," which is "the serous membrane enveloping the lungs and lining the walls of the pleural cavity." Stedman's Medical Dictionary 1399 (27th ed. 2000)

visited Dr. Jack Galbraith for bloating, abdominal pain, and depression. (Tr. 651-652.) Dr. Jack Galbraith suspected irritable bowel syndrome and prescribed ranitidine. (Tr. 651.)

### 3. Psych Care Consultants[7]

Wilson received psychiatric treatment at Psych Care Consultants between March 2004 and October 2008. (Tr. 130-199, 336-354, 366-396.) The records from this provider are handwritten and almost completely illegible.

### 4. Dr. Marsha Toll

Dr. Toll, a state agency psychologist, completed a Psychiatric Review Technique regarding Wilson. (Tr. 355-365.) Dr. Toll found that Wilson had bipolar disorder, depression, and anxiety. (Tr. 358-359.) Dr. Toll stated that records in the file for the relevant timeframe of alleged onset of disability were insufficient for disability determination. She opined that denial of Wilson's claim was appropriate. (Tr. 365.)

### 5. Dr. Kapal Datta

Dr. Kapal Datta completed a Mental RFC Questionnaire regarding Wilson on December 2, 2008. (Tr. 397-402.) Dr. Datta wrote that he had treated Wilson every two months. (Tr. 397.) He diagnosed her with major depression and a global assessment of functioning ("GAF")[8] score of 50, which indicates serious symptoms or serious impairment in social, school, or occupational functioning. (Tr. 397.) Dr. Datta noted that Wilson's mood was generally stable at the time, but her prognosis was guarded. (Tr. 397.) Dr. Datta wrote that he was unable to determine or evaluate Wilson's mental abilities to do work related activities. (Tr. 399-401.)

---

[7] The parties indicate that the provider is Dr. Kapal Datta. The parties also have interpreted parts of the records, which are outlined in their respective briefs.
[8] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

On July 7, 2009, Dr. Datta authored a letter stating that Wilson was a patient under his care for Bi-polar disorder and would continue to be seen regularly for medication management. (Tr. 403.)

      **6.    Center Pointe Hospital**

Wilson was admitted to Center Pointe Hospital between June 3, 2009 and June 24, 2009. (Tr. 404-411.) A letter signed on July 7, 2009 on behalf of Dr. Shazia Malik, stated the following:

> Patricia G. Wilson has been under the care of Dr. K. Datta for the past few years due to her diagnosis of Bipolar Disorder, Depression. Despite several medication adjustments and other radical psychiatric interventions, Ms. Wilson has continued to struggle in her overall ability to function because of her mental illness. Ms. Wilson has also completed several stints of intensive outpatient programming at CenterPointe Hospital and has found only minimal progress in her symptoms.
>
> Ms. Wilson's symptoms include feelings of sadness, hopelessness poor sleep, poor appetite, anxiousness coupled with frequent panic attacks, crying spells, severe anhedonia, psychomotor retardation, low motivation, poor concentration which have led her to be unable to function in most areas of her life. This patient has bouts of her depression where she is unable to complete her activities of daily living and has experienced intermittent thoughts of suicide.

(Tr. 412.)

      **7.    Mercy Hospital St. Louis**

Wilson visited the JFK Clinic at Mercy Hospital in November 2011 and January 2012. (Tr. 610-618). During the November 2011 visit, Dr. Emily Wood found that Wilson had chest pain, hot flashes, hypertension, hyperlipidemia, bipolar disorder and weight gain. (Tr. 616.) On

January 6, 2012, Wilson had a well-woman exam. (Tr. 623-624.) Wilson had lower abdominal soreness and hot flashes, but her pap smear was normal. (Tr. 623-625.)

## V.     Discussion

Wilson presents two issues for review. First, Wilson asserts that the ALJ's RFC determination is not supported by medical evidence. Second, Wilson contends that the hypothetical question to the vocational expert did not capture the concrete consequences of her impairment, therefore, the response of the VE is not substantial evidence. The Commissioner states that substantial evidence as a whole supports the Commissioner's decision.

### A.     RFC Determination

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[9] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). RFC is a medical question. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Some medical evidence must support the determination of the claimant's RFC." *Eichelberger*, 390 F.3d at 591 (citing *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000)) (internal quotation marks omitted). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2003)).

---

[9] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

First, Wilson contends that the RFC determination should have included limitations for her migraine headaches. In this case, Wilson has the burden to prove her RFC during the closed period of disability between May 27, 2003 and December 31, 2004 and she did not meet that burden. A review of the medical records during the time period does not indicate that Wilson experienced any substantial limitations from migraine headaches during the closed period at issue. Medical treatment records discuss Wilson complaining of headaches from a fall in November 2004. (Tr. 201-202.) Wilson also testified regarding debilitating headaches several times per week. (Tr. 31-32, 454-455.)

While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. *Id.* The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. *Id.* The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;

>       (4) the dosage, effectiveness, and side effects of any medication; and
>
>       (5) the claimant's functional restrictions

*Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). In consideration of Wilson's migraine headaches, the ALJ could consider that during the relevant time period there was no medical evidence of migraine headaches on a continuous basis or medication prescribed for migraine headaches. The ALJ stated that any pain from Wilson's headaches was considered in the RFC determination. (Tr. 434.) In sum, Wilson has not met her burden to show what, if any, limitations caused by migraine headaches should have been included in the RFC determination during the relevant time period.

Next, Wilson contends there is no medical evidence supporting the limitation that she is limited to simple instructions and non-detailed tasks. Wilson contends that there is no medical evidence in the record to support the conclusions in the RFC determination, therefore, the matter should be reversed and remanded for proper consideration of the medical opinion evidence. In support of her contention, Wilson refers to the medical opinions of Drs. Datta, Malik, and Toll. Wilson states that these opinions do not support the RFC determination.

As an initial matter, the RFC determination is based on all of the evidence in the medical record, not any particular doctor's treatment notes or medical opinion. *Pearsall*, 274 F.3d at 1217 The ALJ "is not required to rely entirely on a particular physician's opinion or choose

between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

Second, there are no medical opinions from the relevant time period in the record. Dr. Datta's medical opinion was prepared in December 2008 and specifically states that he was unable to determine or evaluate Wilson's mental ability to perform work-related activities. (Tr. 397-402.) Dr. Toll's opinion, dated October 10, 2007, stated that although the record showed one or two repeated episodes of decompensation, there was insufficient evidence to make a determination regarding Wilson's activities of daily living, social functioning, and concentration, persistence, and pace. (Tr. 363-365.) Dr. Malik's opinion was prepared on July 7, 2009 and failed to identify the applicable time period for the opinion. (Tr. 412.)

During the relevant time period, Wilson was treated at St. Anthony's for her depression due to the problems with her boyfriend and a fall that caused a laceration and headaches, and general mental health treatment at Psych Care Consultants. (Tr. 130-159, 201-202, 276-286.) A review of the record as a whole demonstrates that Wilson has some restrictions in her functioning and ability to perform work related activities, however, she did not carry her burden to prove a more restrictive or different RFC determination for the relevant time period. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Based on medical evidence and other evidence in the record during the relevant time period, the RFC determination is supported by substantial evidence in the record as a whole.

### B. VE Testimony

Finally, Wilson contends that the ALJ erred, because the vocational expert testified regarding unskilled work, but the ALJ's RFC determination finds that Wilson is capable of

simple, repetitive work. Wilson contends that it is speculative whether simple, repetitive work and unskilled work are synonymous and whether the vocational expert would have given the same answer despite those differences. Wilson also contends that the hypothetical question does not capture the concrete consequences of her impairment. The Commissioner states that ALJ's determination actually states that Wilson was limited to the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks. The Commissioner admits that ALJ's hypothetical only included a limitation to unskilled work, however, she asserts that this error does not require reversal.

"Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). "[T]he ALJ's hypothetical question must include the impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* "However, the hypothetical need only include those impairments which the ALJ accepts as true." *Grissom v. Barnhart*, 416 F.3d 834, 836 (8th Cir. 2005). A "hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies." *Pickney*, 96 F.3d at 297.

The ALJ did err in failing to present the limitation regarding Wilson's ability to understand, remember, and carry out simple instructions, and non-detailed tasks. In a factually analogous case, however, the Court has previously found that such error was harmless. *See Areno v. Colvin*, No. 4:12-CV-1669 DDN, 2013 WL 5291754 (E.D. Mo. Sept. 19, 2013). In this case, the vocational expert opined that Wilson could perform work as a porter, change person, and cashier. The jobs of change person and porter have a reasoning level of 2. Level 2 reasoning means the employee applies commonsense understanding to carry out detailed, but uninvolved written or oral instructions and deal with problems involving a few concrete

16

variables in or from standardized situations. *See* DICOT 211-467-034, 1991 WL 671854; 357.677-010, 1991 WL 672951. "Because the subsequently included RFC limitations are at least, not inconsistent with work requiring Level 2 reasoning, which includes [porters and change persons], substantial evidence supports the ALJ's finding that Wilson could perform work as a porter or change person." *Id.* at 15. Further, the undersigned finds that the vocational expert's testimony constituted substantial evidence in the record as a whole and could be relied upon by the ALJ at step 5 of the disability determination.

## VI. Conclusion

Based on the foregoing, the undersigned recommends that the Commissioner's decision be affirmed.

**IT IS HEREBY RECOMMENDED** that the request for relief in Plaintiff's Complaint and Brief in Support of Complaint be **DENIED**. [Docs. 1, 17.]

**IT IS FURTHER RECOMMENDED** that judgment be entered in favor of the Defendant in a separate order.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 2nd day of September, 2014.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE